## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LILA BRENNAN,

        Plaintiff,

           v.

BIOSCRIP, INC., R. CARTER PATE, DANIEL E. GREENLEAF, MICHAEL G. BRONFEIN, DAVID W. GOLDING, STEVEN NEUMANN, MICHAEL S. GOLDSTEIN, and CHRISTOPHER S. SHACKELTON,

        Defendants.

---

## COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF
## THE SECURITIES EXCHANGE ACT OF 1934

---

Plaintiff Lila Brennan ("Plaintiff") by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action brought by Plaintiff against BioScrip, Inc., a Delaware corporation ("BioScrip" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with BioScrip, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act

of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger of BioScrip with HC Group Holdings II, Inc. ("Option Care'') and HC Group Holdings I, LLC ("Omega Parent") (the "Proposed Transaction").

2.      On March 14, 2019, BioScrip entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Option Care will acquire BioScrip. The transaction will result in all shares of Option Care's Common Stock cancelled and convered into the right of Omega Parent to receive 542,262,567 shares of BioScrip's Common Stock. Following the close of the Proposed Transaction, Omega Parent will own roughly 79.5% of the issued and outstanding shares of the combined company. In addition, Omega Parent will receive 28, 193, 428.41 of BioScrip Common Stock.

3.      On June 26, 2019, in order to convince BioScrip public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for BioScrip; (ii) valuation analyses performed by the company's primary financial advisor, Moelis & Company ("Moelis"); (iii) details regarding the involvement of the company's secondary financial advisor, Jefferies LLC ("Jefferies'') in regards to the Proposed transaction.

5.      The special meeting of the Company's shareholders to vote on the Proposed Transaction will be held on August 2, 2019. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to a special meeting of BioScrip's

shareholders to vote on the Proposed Transaction so Plaintiff can properly exercise her corporate voting rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BioScrip's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because; (i) Defendants are found or are inhabitants or transact business in this District; (ii) the conduct at issue had an effect in this District; and (iii) Defendants have received substantial compensation via BioScrip by doing business through, with and for BioScrip which is heaquartered in this District.

**PARTIES**

10.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of BioScrip stock.

11.    Defendant BioScrip is a public company incorporated under the laws of Delaware with principal executive offices located at 1600 Broadway, Suite 700, Denver, Colorado. BioScrip's common stock is traded on the New York Stock Exchange under the ticker symbol "BIOS."

12.    Defendant R. Carter Pate is, and has been at all relevant times, a director of the Company and Executive Chairman of the Board.

13.    Defendant Daniel E. Greenleaf is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

14.    Defendant Michael G. Bronfein is, and has been at all relevant times, a director of the Company.

15.    Defendant David W. Golding is, and has been at all relevant times, a director of the Company.

16.    Defendant Michael S. Goldstein is, and has been at all relevant times, a director of the Company.

17.    Defendant Steven Neumann is, and has been at all relevant times, a director of the Company.

18.    Defendant Christopher S. Shackelton is, and has been at all relevant times, a director of the Company.

19.    The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with BioScrip, the

4

"Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20.     BioScrip is a nationwide provider of infusion and home care management solutions.   According to its website, BioScrip focuses on bringing sophisticated drugs and healthcare directly into the homes of patients.

21.     On March 14, 2019, the Board caused the Company to enter into a Merger Agreement with Option Care. A Press Release stated the following:

> BioScrip, Inc. (NASDAQ: BIOS) ("BioScrip") and Option Care Enterprises, Inc.     ("Option Care"), the nation's largest independent providers of home and  alternate treatment site infusion therapy services, today announced that they have entered into a definitive merger agreement. The combination is expected to create a leading independent provider with the national reach, comprehensive therapy offering and financial capacity to succeed in the attractive and growing home and alternate site infusion services segment of the $100 billion U.S. infusion market.
>
> Under the terms of the merger agreement, BioScrip will issue new shares to Option Care's shareholder, which is owned by investment funds affiliated with Madison Dearborn Partners, LLC ("MDP") and Walgreens Boots Alliance, Inc. (NASDAQ: WBA) ("WBA"), in an all-stock transaction. Upon completion of the transaction, MDP funds and WBA will beneficially own approximately 80% of the combined publicly traded company on a fully diluted basis, with current BioScrip shareholders holding the remainder. The combined company's common stock will continue to be listed on the Nasdaq Global Market. The transaction has been unanimously approved by the boards of directors of both BioScrip and Option Care.
>
> The combined company will be led by Option Care Chief Executive Officer John  Rademacher and Option Care Chief Financial Officer Mike Shapiro and will incorporate the best talent, processes and systems from both Option Care and BioScrip. It also will have a leading, independent clinical platform for delivering high-quality infusion therapy to more patients across the United States and providing superior outcomes for patients, payors and providers. BioScrip President and Chief Executive Officer Daniel E. Greenleaf will remain active in the

combined company as a special advisor to its Board of Directors. In addition to Rademacher and Shapiro, the combined company's leadership will draw from the experienced teams of both Option Care and BioScrip.

The transaction, which is expected to be completed in the second half of 2019.

In connection with the transaction, Jefferies LLC and Moelis & Company LLC are acting as joint financial advisors to BioScrip, and Gibson, Dunn & Crutcher LLP is serving as legal advisor. Goldman Sachs & Co. LLC and BofA Merrill Lynch are acting as financial advisors and Kirkland & Ellis LLP is acting as legal advisor to Option Care.

In addition to Rademacher and Shapiro, the combined company's leadership will draw from the experienced teams of both Option Care and BioScrip.

The transaction, which is expected to be completed in the second half of 2019.

In connection with the transaction, Jefferies LLC and Moelis & Company LLC are acting as joint financial advisors to BioScrip, and Gibson, Dunn & Crutcher LLP is serving as legal advisor. Goldman Sachs & Co. LLC and BofA Merrill Lynch are acting as financial advisors and Kirkland & Ellis LLP is acting as legal advisor to Option Care.

**The Proxy Omits Material Information**

22.     On June 26, 2019, Defendants filed a materially incomplete and misleading Proxy Statement with the SEC. The special meeting of BioScrip stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

23.     First, the Proxy fails to provide enough information regarding financial projections

for the Company.   In particular, the Proxy fails to disclose: (i) all line items used to calculate Adjusted EBITDA; (ii) all line items used to calculate Pro Forma Adjusted EBITDA; (iii)all line items used to calculate unlevered free-cash flow; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

24.    Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.   Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:   Is the Merger Consideration fair compensation given BioScrip's projected cash flows?   Without the line items underlying BioScrip's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

25.    Second, the Proxy Statement omits material information regarding the analyses performed by Moelis in regards to the transaction.

26.    With respect to Moelis's *Discounted Cash Flow Analysis*, the Proxy is also materially misleading and incomplete because it fails to disclose (i) the inputs and assumptions underlying the selection of the range of discount rates from 9.5% to 12.5%; (ii) the basis for applying a range of multiples of 10.0x to 13.0x to terminal year Adjusted EBITDA and (iii) the estimated projected net-operating losses used by Moelis in its calculations. *See* Proxy at 75-77.

27.    With respect to Moelis's *Selected Publicly Traded Companies Analysis*, Moelis selected two groups of companies: a group involved with Multi-Site Medical Care and a group of Home Health/Hospice Providers. It is not disclosed anywhere in the proxy however, how the companies in either group were selected. Without the disclosure of the selection criteria used,

shareholders do not know whether the Moelis's analysis actually shows BioScrip's performance relative to its actual industry "peers".

28.    These key inputs are material to BioScrip shareholders, and their omission renders the summary of both Moelis's *Discounted Cash Flow Analysis* and its *Selected Publicly Traded Companies Analysis* is incomplete and misleading.   As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, BioScrip's shareholders cannot evaluate for themselves the reliability of Moelis's analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Moelis, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

29.     Third, the Proxy Statement omits material information regarding the engagement of the Company's financial advisor, Jefferies, in regarding to the Proposed Transaction. The fee Jefferies will be receiving is not disclosed. Even more troubling, Jefferie's terms regarding a potential financing of the Proposed Transaction and the fees involved therein are not disclosed either. Likewise, it is not disclosed whether Jefferies has received compensation from the Company and/or Option Care for work done in the past, and if so, how much.

30.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

31.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to cast an informed vote regarding the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9)**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title." 15 U.S.C. § 78n(a)(1).

34.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35.    The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

36.    Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for BioScrip; (ii) valuation analyses performed by 's financial advisor, Moelis; (iii) details regarding the involvement of the company's secondary financial advisor, Jefferies in regards to the Proposed Transaction.

37.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

38.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.

The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Moelis reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Moelis, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Moelis's analyses in connection with their receipt of the fairness opinions, question Moelis as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

40.     BioScrip is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

41.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(Against the Individual Defendants for Violations of**
**Section 20(a) of the Exchange Act)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of BioScrip within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of BioScrip, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in preparing this document.

46.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 27, 2019                                    **MONTEVERDE & ASSOCIATES PC**

By:  _/s/ Juan E. Monteverde_
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*